USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/11/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUSTAVO MONTEROSA,

                Plaintiff,

-against-

THOMAS DECKER et al.,

                Defendants.

1:20-cv-02653-MKV

OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

    Petitioner Gustavo Monterosa ("Monterosa" or "Petitioner") filed a Verified Petition for a Writ of Habeas Corpus, with several exhibits attached [ECF 1] (the "Petition") on March 30, 2020. Three days later, on April 2, 2020, Petitioner filed an Application for an Order to Show Cause why his Petition should not be granted [ECF 4], seeking to bring this case on for immediate merits disposition. The same day, the Court issued an Order to Show Cause requiring the Government to respond by April 6, 2020 [ECF 6]. The Government filed a Return to the Petition [ECF 9] (the "Return"), a Memorandum of Law [ECF 10] ("Opposition"), and two declarations supporting its response [ECF 11–12]. Petitioner filed a reply memorandum of law [ECF 13] (the "Reply"), along with the Declaration of Hannah Lieberman, Petitioner's immigration counsel [ECF 13, Ex. 1] ("Liberman Decl."). On April 9, 2020, the Court held a telephonic hearing concerning the Petition.[1] After reviewing the Parties' submissions and relevant authorities and hearing argument, the Petition is DENIED.

---

[1] In light of the President's declaration of a National Emergency due to the COVID-19 Pandemic and pursuant to this Court's standing orders addressing entry to the courthouses, M10-468, 20-mc-00155 and 20-mc-00138, hearings in civil matters are being conducted remotely by telephone.

1

## BACKGROUND

Monterosa is a thirty-three-year-old Mexican citizen. Petition ¶ 3. On October 23, 2019, he was taken into custody by United States Immigration and Customs Enforcement ("ICE") following an unrelated arrest in Yonkers, New York for assault and harassment in June 2019. Petition ¶ 22; Opposition at 2. This was not Monterosa's first encounter with U.S. immigration authorities. Specifically, in April 2008, he was apprehended three separate times in Arizona after apparently entering the United States illegally. Opposition at 2. On each occasion, he was voluntarily returned to Mexico. Opposition at 2.

Not long after he was last returned to Mexico in April 2008, and approximately twelve years ago, *see* Motion for Reconsideration of Bond Denial at 1 [ECF 1, Ex. 4 at 2]; Reply at 1, Petitioner reentered the United States apparently without authorization.[2] After he was taken into ICE custody in October 2019, Petitioner received a Notice to Appear, which charged him with being illegally present in the United States and removable under 8 U.S.C. § 1182(a)(6)(A)(i). Petition ¶ 24, Ex. 1 at 2; Opposition at 2. Simultaneously, Petitioner received a Notice of Custody Determination, in which ICE informed him that he would be detained during the pendency of removal proceedings. Petition ¶ 24, Ex. 1 at 5-6; Opposition at 2–3. Petitioner also was informed at that time that he could seek review of the detention decision through a bond hearing. Petition, Ex. 1 at 5-6. Petitioner was subsequently detained at the Orange County Correctional Facility in Goshen, New York, where he remains today. Petition ¶ 9.

Monterosa's removal proceedings were commenced on October 25, 2019 when ICE filed the Notice to Appear with the Immigration Court. Opposition at 3. Shortly thereafter, on

---

[2] During the April 9, 2020 hearing, Petitioner's counsel conceded that Monterosa previously had three times been detained and voluntarily returned to Mexico. She further represented to the Court that Monterosa re-entered the United States without authorization in Fall 2008.

2

November 19, 2019, the Government filed its evidence in support of Monterosa's removal. *Id.* Petitioner's removal hearing was originally scheduled to go forward on December 12, 2019, but was adjourned to January 14, 2020 after a *sua sponte* adjournment by the Immigration Judge and thereafter a request for adjournment by Petitioner's counsel. Petition ¶ 27; Opposition at 3. At the January 14 hearing, Petitioner did not present any application for relief from removal, but requested an additional adjournment in order to gather documents. Opposition at 3–4. The hearing on removability was again adjourned to January 23, 2020 and, on Monterosa's request, it was further adjourned to February 20, 2020. *Id.*

Meanwhile, Petitioner filed an application for a bond hearing on January 6, 2020. Petition ¶ 27; Opposition at 3. He requested that the bond hearing occur on January 14, 2020, the same day that the removal hearing was then scheduled to be held. Petition ¶ 27; Opposition at 3. Both Petitioner and ICE submitted documents in support of and opposing bond respectively. Petition ¶ 28; Opposition at 3. Among the exhibits offered by Petitioner were documents related to Monterosa's June 2019 arrest, including an order of protection in which he was directed to stay away from the alleged victims of the assault, *see* Petition, Ex. 5 at 27, and several letters of support from family, friends, and co-workers, *see id.* at 6–24. The Immigration Judge found that Monterosa had failed to show that he was not a danger to the community and denied his release from detention on bond. Petition ¶ 29; Opposition at 3. Apparently, no appeal was taken from the denial of bond at the January 14, 2020 hearing.

Rather than appeal from the denial of bond, on January 17, 2020 Petitioner instead filed a motion for reconsideration of the bond determination. Petition ¶ 30, Ex. 4; Opposition at 4. A hearing on the motion for reconsideration was scheduled for February 20, 2020, the same day as the adjourned removal hearing. Petition ¶ 30; Opposition at 4.

At the February 20 hearing, Petitioner submitted additional documents in support of his bond application, but again failed to seek relief from removal. Petition ¶ 34, Ex. 5 at 37-50; Opposition at 4. After reviewing these additional documents, the Immigration Judge denied the motion to reconsider the bond determination, finding Monterosa had not demonstrated either a mistake of law in the previous decision or a material change in the factual circumstances warranting a new bond hearing. Petition ¶¶ 31–32, Ex. 3; Opposition at 4. According to Petitioner's immigration counsel, the Immigration Judge further ruled that Monterosa was a danger to the community and a flight risk. Lieberman Decl. [ECF 13, Ex. 1] at ¶ 6.[3] At the same hearing, Monterosa's counsel once again requested an adjournment to gather documents to contest his removal. Petition ¶ 34; Opposition at 4. The request for a further adjournment was denied for lack of good cause shown and Monterosa was ordered removed to Mexico. Petition ¶ 34; *see* Return, Ex. E.

Petitioner timely appealed the order of removal to the Board of Immigration Appeals ("BIA") approximately one month after the denial. Opposition at 5; Lieberman Decl. ¶ 7. However, Petitioner did not file a notice of appeal with respect to the Immigration Judge's denial of the motion for reconsideration of the bond determination until March 30, 2020. Petition ¶ 33; Opposition at 5. Petitioner contends that filing was untimely as a result of a "clerical error." *See*

---

[3] During the April 9 hearing on the Petition, Petitioner's counsel maintained that the Immigration Judge made no finding regarding Petitioner's flight risk. However, the papers submitted in advance of the hearing, including the sworn statement of Petitioner's immigration counsel, state that such a finding was made on February 20, 2020. Indeed, Petitioner's Notice of Appeal to the BIA suggests that what occurred on February 20 was not a reconsideration hearing, but was instead a second bond hearing at which the Immigration Judge made new findings of fact, including that Monterosa was both a flight risk and a danger to his community. *See* Motion Requesting Certification of Appeal at 5-7 [ECF 16, Ex. 1 at 9-11]. Any confusion over this issue supports exhaustion of administrative remedies to develop a fulsome record before judicial review. *See* infra at 9-10.

Lieberman Decl. ¶ 7. The untimely appeal was subsequently accepted by the BIA. Reply at 1-2; Lieberman Decl. at ¶ 8. Thus, there is an appeal of both Petitioner's bond denial and the order of removal pending before the BIA.

After waiting approximately six weeks from the denial of bond and order of removal, Monterosa filed the Petition on March 30, 2020, and sought an Order to Show Cause on April 2, 2020. The Order to Show Cause, which the Court signed [ECF 6], sought merits adjudication of the Petition rather than any form of temporary relief.

In his Petition, Monterosa challenges only the procedures in place at his bond hearing, specifically that the burden of proof was placed on him and not on the government. Petition ¶¶ 2, 60–63. As a result, Petitioner claims he is entitled to a new bond hearing and asks this court also to direct that such hearing be held within five days and that the Immigration Judge consider his ability to pay and alternatives to detention. *See* Petition at 28; Reply at 10. The Petitioner also alleges in the alternative that the ongoing COVID-19 pandemic constitutes a threat of irreparable harm such that the Court should order him released on bond immediately.[4] Petition ¶¶ 2, 19, 35-37, 39, 50-51.

The Government opposes the Petition on the grounds that Petitioner has failed to appropriately exhaust his administrative remedies and that, in any event, the burden was appropriately placed on Petitioner at the bond hearing. *See*, *e.g.*, Opposition at 1. The

---

[4] At the April 9 hearing, Petitioner's counsel asserted that the Petition seeks a "procedure" remedy and only seeks Petitioner's release in the alternative. The Petition seems to seek the opposite. *See* Petition at ¶ 2 ("Mr. Monterosa seeks release or an immediate, constitutionally adequate bond hearing."); Petition at 28 [Prayer for Relief] ("Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from custody on his own recognizance or on reasonable conditions of supervision, or in the alternative, ordering Respondents to provide Petitioner, within five calendar days, a constitutionally-adequate hearing"). At the April 9 hearing, Petitioner's counsel confirmed that release was ultimately the relief Monterosa seeks.

5

Government also provides an extensive rebuttal, supported by two declarations, to the Petitioner's argument that the COVID-19 pandemic mandates his release from detention while his removal appeal is pending. Opposition at 5-11.

## **LEGAL STANDARD**

The Court is authorized "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Under this provision, federal courts are empowered to hear claims by non-citizens challenging the constitutionality of their detention. *Demore v. Kim*, 538 U.S. 510, 516-17 (2003).

Petitioner has not and cannot dispute, however, that the Department of Homeland Security has the discretionary authority to detain an alien pending resolution of his or her removal proceeding. *See* 8 U.S.C § 1226(a). After ICE makes an initial detention decision, any person who is detained has the right to request a bond hearing before an Immigration Judge. *See* 8 U.S.C § 1226(a); 8 C.F.R. §§ 1236.1(c)(8), 1236.1(d)(1). Petitioner alleges (Petition ¶ 15-16)—and the Government freely admits (Opposition at 11-12)—that as a matter of regulation and BIA precedent, the burden at such a bond hearing is placed on the detainee to demonstrate lack of dangerousness to the community and that he is not a flight risk.[5] *See* 8 C.F.R. § 1236.1; *see Matter of Urena*, 25 I. & N. Dec. 140, 141 (BIA 2009). Detainees have the right to appeal to the BIA the decision of an immigration judge in a bond proceeding. *See* 8 C.F.R. § 1236.1(d)(3) ("An appeal relating to bond and custody determinations may be filed to

---

[5] The Government admitted during the April 9 hearing on the Petition that the BIA likely would not alter its burden allocation in this case or any case before a definitive ruling from the Second Circuit or the U.S. Supreme Court.

the Board of Immigration Appeals . . . . "); *see also* 8 C.F.R. § 1003.19(f); 8 C.F.R. § 1003.38(a); 8 C.F.R. § 1003.1(b).

Typically, in cases concerning immigration detention and removal, a Court is limited to review of the final order of removal and may not hear interlocutory appeals challenging removal or detention. *See* 8 U.S.C. § 1252(b)(9). The same statutory provision also strips the Court of habeas corpus jurisdiction over removal cases until a final order of removal is entered. *Id.* However, here, the Petitioner is "not asking for review of an order of removal; [he is] not challenging the decision to detain [him] in the first place or to seek removal; and [he is] not even challenging any part of the process by which [his] removability will be determined. Under these circumstances, Section 1252(b)(9) does not present a jurisdictional bar." *Jennings v. Rodriguez*, -- U.S. --, 138 S. Ct. 830, 841 (2018). Likewise, the similar provision in 8 U.S.C. § 1226(e) does not bar jurisdiction over the Petition here. *See Jennings*, 138 S. Ct. at 841; *Torres v. Decker*, No. 18-cv-10026, 2018 WL 6649609, at *1 (S.D.N.Y. Dec. 19, 2018).

While there is no statutory jurisdictional bar to review, courts regularly require, as a prudential matter, that a detainee exhaust administrative remedies to challenge detention or bond decisions before the Court will exercise any jurisdiction over the case. *See Torres*, 2018 WL 6649609, at *2 (noting "Although there is no statutory requirement that a detained non-citizen exhaust all administrative avenues of relief before challenging the lawfulness of his immigration detention in federal court, courts routinely require such exhaustion as a prudential matter") (collecting cases) (citing *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014); *Joseph v. Decker*, 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018) ("Although '[t]here is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus,' courts generally do require such

exhaustion 'as a prudential matter.'" (quoting *Nativi v. Shanahan*, No. 16-cv-8496 (JPO), 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017)) (alterations in original))); *see also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2004) ("The requirement of administrative exhaustion can be statutorily or judicially imposed." (citing *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998))).

Petitioner admits that prudential exhaustion applies here, but argues that several "exceptions" to the judicially-created exhaustion doctrine counsel in favor of waiving the exhaustion requirement in this case. *See* Petition ¶ 13–14. Specifically, Petitioner relies on guidance from the Second Circuit holding that "exhaustion of administrative remedies may not be required when (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F.3d at 62 (citing *Able v. U.S.*, 88 F.3d 1280, 1288 (2d Cir. 1996)). The Court of Appeals has confirmed, however, that generally speaking, "[e]xhaustion is the rule, waiver the exception." *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir. 1992).

## **DISCUSSION**

The Court finds that Petitioner should have exhausted his administrative remedies before filing his Petition in this Court. None of the exceptions to the prudential exhaustion rule applies to excuse Petitioner's failure to exhaust his remedies. Thus, the Petition is denied as premature.

First, Petitioner submits that while an appeal of the denial of bond has been filed, the appeal to BIA ultimately is futile and provides no opportunity for relief. *See* Petition ¶ 13-18. In support of this assertion, Petitioner argues that the BIA has no jurisdiction to decide his

constitutional claims and, in any event, will not depart from BIA precedent regarding the allocation of the burden of proof. *See id.* ¶¶ 16, 18. As noted above, *see* fn. 5, the Government does not dispute that the BIA is unlikely to alter its burden of proof analysis absent a definitive ruling from the Second Circuit.[6] "That is not a foregone conclusion, however, in light of the number of recent district court decisions holding that position to be unlawful," *Torres*, 2018 WL 6649609, at *2 (collecting cases), and the potential for a ruling in the near term from the Second Circuit. Even assuming Petitioner is likely to be unsuccessful in front of the BIA on this argument, the mere claim "that [an] argument would likely have failed is not tantamount to stating it would have been futile to raise it . . . ." *Beharry*, 329 F.3d at 62. Raising all colorable arguments during the administrative process, including those arguments that are ultimately unsuccessful, may still allow the development of a fulsome record or for an administrative decision on other grounds that eliminates the need for judicial consideration of Monterosa's constitutional arguments. *Id.* at 62-63.

Moreover, Petitioner does not argue that appealing the denial of bond to the BIA on the basis of the weight of the evidence (*i.e.* whether the evidence Petitioner provided was sufficient to overcome the burden placed on him allegedly improperly) will be futile. Petitioner submitted evidence he (presumably) believed would overcome the burden at the original bond hearing to demonstrate he was not a danger to the community or a flight risk. *See* Petition ¶ 28, Ex. 5 at 6-36. And, he did so again at the hearing on the motion for reconsideration, in adding to his

---

[6] The Court notes that such a case is pending at the Second Circuit, *Velasco Lopez v. Decker*, Case No. 19-2284, and reportedly is set for argument on May 13, 2020. *See* ECF 31, *Velasco Lopez v. Decker*, Case No. 19-2284 (2d Cir. Mar. 13, 2020). Specifically, the case asks the court to decide "Whether the district court erred in holding that due process requires the government to bear the burden of justifying an alien's continued detention at a bond hearing under 8 U.S.C. § 1226(a)." *See* Brief for Respondents-Appellants at 3, ECF 31, *Velasco Lopez v. Decker*, Case No. 19-2284 (2d Cir. Nov. 5, 2019).

evidentiary record.  *See* Petition ¶ 31, Ex. 5 at 37-50; Motion Requesting Certification of Appeal at 3-5 [ECF 16, Ex. 1 at 7-9].  Even after the Immigration Judge explained that the burden of proof would rest on Petitioner, he submitted new information about his arrest and alleged his own innocence to demonstrate that he is not dangerous and does not pose a flight risk.  Petition ¶ 31.  Following the bond hearing on February 20, the Immigration Judge found that Petitioner was both a danger to the community and a flight risk.  *See* Lieberman Decl. ¶ 6.  Relying on the evidence Petitioner submitted to the Immigration Judge, the BIA could reverse that finding and instruct the Immigration Judge to set bond and release him.  Petitioner's counsel conceded during the April 9 hearing that even if remand to the Immigration Judge for further fact-finding is required, the administrative process ultimately could award Petitioner the relief he seeks.[7]  Such an order would moot the ultimate claim for relief in the Petition, *i.e.* that Monterosa be released on bond.  *See* Petition at 28.

The possibility of that outcome is a "genuine opportunity for relief" before the BIA.  Petitioner, however, confuses the existence of that opportunity with an opportunity to succeed on his own preferred terms.  The latter need not exist.  Neither the "genuine opportunity for relief" nor the "futility" exception warrants excusing exhaustion here.

Second, Petitioner argues that because the Petition raises constitutional issues that the BIA does not have jurisdiction to review, *see Severino v. Mukasey*, 549 F.3d 79, 83 (2d Cir. 2008), exhausting any BIA appeal is unnecessary.  *See* Petition at ¶ 16.  Mere existence of a

---

[7] If, as Petitioner's counsel stated at the April 9 hearing, the BIA finds that the Immigration Judge did not make any findings about Petitioner's flight risk, no one contests that the BIA would then remand the case for factfinding or another bond hearing before the Immigration Judge.  *See* 8 C.F.R. § 10003.1(d)(3).  The results of that hearing could then be appealable to the BIA.

10

constitutional issue, however, does not create an automatic exception to an exhaustion requirement. *Able v. U.S.*, 88 F.3d 1280, 1288 (2d Cir. 1996) (citing *W.E.B. DuBois Clubs v. Clark*, 389 U.S. 309, 312 (1967)). Indeed, courts will endeavor to avoid deciding a constitutional issue if the case might be resolved on a narrower factual basis. *See Allstate Ins. Co. v. Serio*, 261 F.3d 143, 149-150 (2d Cir. 2001) ("It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions."); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

Petitioner objects to exhaustion because the BIA's decision on the burden of proof allegedly will be pre-ordained, based on longstanding BIA precedent. However, "that argument is a red herring: exhaustion makes sense *not* because this Court would benefit from the BIA's views on Petitioner's constitutional and statutory arguments, but [rather] because a decision favorable to Petitioner on other grounds would moot" the constitutional issue the Petition seeks to frame. *Torres*, 2018 WL 6649609, at *3 n. 3. Indeed, the "constitutional question" exception to prudential exhaustion does not apply here for the reasons discussed above—namely, that answering the constitutional questions may be entirely unnecessary if the BIA were to decide to release Monterosa based on the evidentiary record. Declining to act before such a decision is rendered is consistent with the "axiomatic" rule that the Court should avoid reaching a constitutional question until it must. *Allstate Ins. Co.*, 361 F.3d at 149-150. If Petitioner's release is not granted and other administrative avenues for relief are exhausted, then and only then would the constitutional issue be ripe for judicial adjudication.

Requiring exhaustion in this scenario also promotes respect for a co-equal branch of government and preserves judicial resources for other disputes where a judicial determination is needed. *See Washington v. Barr*, 925 F.3d 109, 117 (2019) ("[E]xhaustion furthers two important goals. First, it "protect[s] administrative agency authority." . . . Second, exhaustion "promotes judicial efficiency" by giving an administrative agency a chance to resolve a dispute, thus either rendering controversies moot or "produc[ing] a useful record for subsequent judicial consideration." (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992))). This consideration is especially salient here, where the record in front of the Court is incomplete and there is confusion about what exactly the Immigration Judge decided. Continued development of the administrative record also will allow for a written opinion from the Immigration Judge, which the Government represented during the April 9 hearing is likely now that an appeal from the bond orders has been accepted by the BIA. Despite the invitation, the Court will not strain to usurp jurisdiction from the Executive Branch to reach and decide constitutional questions on an incomplete record when those questions may not need to be decided at all in this case. The Court is even less inclined to do so where the proposed relief would have the Court dictate to that branch of government not only the appropriate burden of proof, but also the precise procedures and factors to be weighed in a discretionary bond determination. *See* Petition ¶ 58 (requesting that the Court order the Immigration Judge to act within five days and to consider Petitioner's ability to pay and alternative conditions of release); Reply at 10.

Finally, Petitioner alleges that the ongoing COVID-19 pandemic presents a risk of imminent irreparable harm such that his failure to exhaust administrative remedies should be excused. *See* Petition ¶ 19. Petitioner needs to invoke COVID-19 here because otherwise there is no risk of irreparable harm simply as a result of detention. *See Michalski v. Decker*,

279 F. Supp. 3d 487, 496 (S.D.N.Y. 2018) ("[The] claim that prolonged detention constitutes an irreparable injury that may excuse exhaustion has been rejected by courts in this District."). Significantly, although knowledge of the COVID-19 pandemic was broadly held by at least early March 2020, and the President declared a national emergency on March 13, 2020, Petitioner waited almost six weeks after his bond was denied to file his Petition. *See* World Health Organization, "Timeline – COVID-19," last updated Apr. 11, 2020, available at https://www.who.int/news-room/detail/08-04-2020-who-timeline---covid-19; The White House, Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, issued Mar. 13, 2020, available at https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

In support of his argument that COVID-19 presents a severe risk to Monterosa, the Petition notes that his detention has "exacerbated his physical and mental health and placed him at imminent risk of harm due to the global pandemic." To be sure, the United States Centers for Disease Control and Prevention ("CDC") has warned that certain classes of individuals are at significantly higher risk of contracting a serious form of COVID-19. For example, individuals with lung disease, including asthma, heart disease, diabetes, or a compromised immune system are at higher risk of COVID-19. *See* CDC, "Groups at Higher Risk for Severe Illness," Coronavirus Disease 2019 (COVID-19), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. As a result of these higher risks, courts have granted habeas corpus relief to individual immigration detainees who were at a significant risk of dangerous complications from COVID-19 based on the individual detainee's documented health profile. Indeed, the petitioners in each of the cases Monterosa cites alleged just such a

heightened *individual* risk for COVID-19 due to pre-existing health issues based on CDC guidance. *See Coronel v. Decker*, No. 20-cv-2472 (AJN), 2020 WL 1487274, at *1, *3 (S.D.N.Y. March 27, 2020) (detainees with compromised immune system, diabetes, and cardiovascular disease); *Basank v. Decker*, No. 20-cv-2518 (AT), 2020 WL 1481503, at *1, *3 (S.D.N.Y. March 26, 2020) (detainees with diabetes, asthma, cardiovascular disease, and other conditions).

The Petition here cites only allegations of a generalized threat that bears no particularized relation to Petitioner. This is not sufficient. Petitioner does not claim to have any condition that increases his risk of serious illness or death from COVID-19, and thus he has not alleged any risk of irreparable harm from continued detention. Indeed, Petitioner's counsel admitted during the April 9 hearing that Monterosa does not suffer from any underlying medical condition that would increase his risk of developing severe complications from COVID-19. The Petition alleges instead that "Mr. Monterosa has lost substantial weight since being detained, and his forced separation from and resulting limited communication with his family, particularly his partner, has caused him depression and anxiety." Petition ¶ 19.[8]

Petitioner also argues that a generalized fear of contracting COVID-19, and a specific fear of contracting it as a result of Petitioner's detention in the Orange County facility, is sufficient to constitute irreparable harm. Petitioner's generalized "fear about contracting the virus [which] has increased his anxiety and caused him ongoing headaches," Lieberman

---

[8] The Court notes that these statements appear in the Petition without support or citation. Some support, having nothing to do with COVID-19, exists in the letters of support presented to the Immigration Judge, *see* Petition, Ex. 5 at 6-36, but support is not available for all of counsel's representations about Monterosa's health. As the Petition is verified by Petitioner's counsel, the court will consider them sworn statements from that person.

14

Decl. ¶ 9, is not unique to him.  Similar anxiety is shared by virtually every citizen who is obeying stay at home and self-distancing directives.  Such generalized fears and anxiety do not constitute risk of irreparable harm.

Petitioner's fear as a result of incarceration at the Orange County facility are similarly too generalized to warrant excusing exhaustion here.  Petitioner alleges that he is "at heightened risk of contracting COVID-19 due to the carceral setting and unsanitary and hazardous conditions at Orange County Jail."  *See* Lieberman Decl. ¶ 9.  That assertion is apparently based only on undocumented "conversations [counsel] had with other clients."  *Id*.  To bolster Petitioner's argument, counsel marshals news reports, anecdotes, and the incidence of COVID-19 *outside* the detention center in Orange County and at other detention centers outside the jurisdiction of this Court.  *See* Petition ¶ 35-37, 50-51; Reply at 2, 7.  No affidavits from Petitioner or any other person with knowledge of the Orange County facility is offered in support of the relief sought in the Petition.  Even if true, these concerns are generalizable to the entire population of the Orange County facility where he is being detained, or to every person incarcerated at any facility in the United States, and not specific to Monterosa.

Moreover, the Petition's statements about the conditions and processes in place at the Orange County facility are contradicted by the Government's evidence of the concerted efforts taken to prevent the spread of COVID-19.  As set forth in the Declaration of Captain Lawrence Catletti ("Catletti Decl.") [ECF 12], an Orange County Sheriff's Office employee assigned to the facility and assisting with the facility's response to COVID-19, there remain no confirmed cases of COVID-19 in the Orange County facility and the staff continue to take efforts to test and respond to any potential risks of the disease.  *See* Catletti Decl. ¶ 9-10.  Petitioner himself crystallizes in reply the efforts undertaken in Orange County, conceding that no cases of the

15

disease have been found in the facility.  Reply at 7.  He emphasizes instead that dozens of cases have been found in other ICE detention facilities in the New York metropolitan area (specifically at three New Jersey facilities, *see* Petition ¶ 36) and in Orange County itself (outside the facility). *See* Reply at 2.  Absent individualized risk to Petitioner and evidence of risk specific to him or even the Orange County facility, these concerns do not constitute risk of irreparable harm and are not sufficient to overcome the prudential requirement that he exhaust administrative remedies.

## CONCLUSION

In short, Petitioner has failed to exhaust administrative remedies following the denial of bond.  Courts agree that such exhaustion is required unless one of several narrow exceptions is met.  As set forth herein, Petitioner has failed to demonstrate any such exception.  Without in any way minimizing the seriousness of the constitutional arguments Petitioner hopes to make, those arguments may be mooted by fact-based decisions at the BIA where Petitioner's appeal is already pending.  Accordingly, the Petition for a writ of habeas corpus is DENIED and the case is DISMISSED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**Date:  April 11, 2020**            **MARY KAY VYSKOCIL**
       **New York, NY**                **United States District Judge**